**FILED**

**APR 2 2 2005**

**U.S. DISTRICT COURT
CLARKSBURG, WV 26301**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Criminal No. 1:05 CR 04

DANIEL WILSON TESTERMAN,

    Defendant.

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT, DANIEL WILSON TESTERMAN'S, MOTION TO SUPPRESS

On April 13, 2005, a hearing was held before the Honorable John S. Kaull, United States Magistrate Judge, regarding the motion to suppress various search warrants filed by the Defendant, Daniel Wilson Testerman. During said hearing, testimony was adduced from M. D. Kelly, Chief Deputy of Ritchie County, West Virginia, who co-authored (along with the secretary of the Ritchie County Prosecuting Attorney's office) and signed the affidavit(s) attached to the search warrants in question.

The majority of Chief Deputy Kelly's testimony involved the investigation into the alleged criminal activities of the Defendant, prior to and after the search warrants were issued by the Ritchie County Magistrate's office. The critical and most important portion of Deputy Kelly's testimony was his recollection of the presentation of the search warrant affidavits to the magistrate. He stated that he usually provides the magistrate information not contained in the search warrant affidavit about his investigation into the case for which he is seeking a search warrant. Further, that said information consists of unsworn, oral statements not placed on the record. However, in this particular case, he could not remember what information he gave to Magistrate Haugh prior to the

issuance of any of the search warrants and whether he even showed him the photograph of the nude male which gave rise to his initial investigation.

The issues in this case are the standard by which the affidavit supporting the issuance of the initial search warrant should be judged and whether that affidavit was sufficient to establish probable cause for the search warrant.

The Fourth Amendment of the United States Constitution commands that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." The decision of the United States Supreme Court in *Whitely v. Warden, 401 U.S. 560, 91 S.Ct. 1509, 12 L.Ed.2d 306 (1971)*, squarely addresses the meaning of said clause:

> Under the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate.... A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless.

The foregoing decision requires that in this case the Court can only consider the sufficiency of the affidavits presented to the Ritchie County Magistrate and not any oral, unsworn information that may or may not have been provided, or, the testimony provided by the officer at the hearing to suppress same. It is limited to a snapshot of time, i.e., what did the magistrate know as presented within the four-corners of the affidavit when the search warrant was issued.[1]

The affidavit in this case is two pages and alleges that the Defendant violated a portion of the West Virginia code making it a criminal offense to unlawfully, with intent to harass or abuse

---

[1] The standards to be applied are set forth in the Defendant's original memorandum of law filed contemporaneously with his motion to suppress and included with this memorandum for reference.

another individual, use a computer to transmit obscene material without disclosing the transmitter's identity. (Suppression Hearing Exhibit 5) Actually, that is not what the statute provides. The statute states in pertinent part:

§61-3C-14a:

(a) It is unlawful for any person, with the intent to harass or abuse another person, to use a computer to:

(1) make contact with another without disclosing his or her identity with the intent to harass or abuse;

(4) cause obscene material to be delivered or transmitted to a specific person after being requested to desist from sending such material.

The statute goes on to define "obscene material". (See Government Exhibits).

After inaccurately describing the crime alleged to have been committed by the Defendant, by merging the sections of the statute, the affidavit goes on to state that the means to commit the crime "namely, any and all records contained within any personal computer's hard drive and memory as well as all software which may have been used in connection with and to facilitate the above crimes" is concealed in the Defendant's home and that the facts for such belief are "that Amy Workman received several obscene photographs by e-mail. She recognizes the person depicted in said obscene photographs as being Daniel Testerman".

It is clear that sending obscene photographs to another person is not a crime under the foregoing statute. Such activity can become a crime if the photographs are sent with the intent to harass and abuse another person and the contact is made without describing the identity of the sender; or, if the obscene material is delivered or transmitted after a request to stop such activity has been made.

The affidavit in question is silent as to whether Ms. Workman felt abused or harassed, whether the sender of the material failed to disclose his or her identity, where the information came from, when the information arrived, how she recognized the person in the photograph as Daniel Testerman and how the photograph(s) [there was only one photograph] was obscene as defined by the statute.

The information in the affidavit conclusory and dismally fails to set out facts which could enable a neutral and detached magistrate to determine whether probable cause existed. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare bones conclusions of others. *Aguilar v. Texas, 378 U.S. 108, 4 S.Ct. 1509, 12 L. Ed. 2d 723 (1964)*. See also *Giordello v. United States, 357 U.S. 48, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); United States v. Jenkins, 649 F.2d 273 (4th Cir. 1981)*.

What gives further credence to the Defendant's argument is the nature of the material sought to be seized. It has already been pointed out that the material was alleged to be obscene and was never independently reviewed by the magistrate. Because this material is presumptively protected by the First Amendment, the law is clear that no such material may be seized for its obscene character until a detached, impartial magistrate has made an independent probable cause determination of obscenity based upon <u>prior</u> careful scrutiny of the material. *Lee Art Theatre, Inc. V. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L. Ed.2d 757 (1973); Lo-Ji Sales Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L. Ed. 2d 920 (1979)*. In *Penthouse International, Ltd. v. McAuliffe, 610 F.2d 1353 @1362 (5th Cir. 1980)*, the Court stated:

> Taken together, *Heller* [413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973)] and *Roaden* establish the minimum constitutional requirement for a seizure of allegedly obscene materials. The Constitution at a minimum apparently requires the imposition of a neutral, detached magistrate in the procedure to make an independent judicial determination of probable cause prior to issuing an arrest warrant or some other warrant authorizing the seizure of allegedly obscene material to be used as evidence.

Because the magistrate in this case never saw the pictures sent to Ms. Workman or any other pictures, it was inappropriate to issue the search warrants which led to the seizure of evidence sought to be suppressed in this proceeding.

During the suppression hearing, the Untied States argued that because a criminal complaint and arrest warrant were issued for the Defendant (Government Exhibit 4), the issuance of the search warrant was somehow justified. First, the criminal complaint and arrest warrant were issued <u>after</u> the search warrant had been issued and the search conducted. Second, the issuance of the criminal complaint was based on the same "facts" as were contained in the affidavit in question Finally, this argument has not been accepted by the courts. In *United States v. DeFalco, 509 F. Supp. 127 (1981)*, the Defendant and others were indicted by a grand jury on various charges involving the transportation of obscene material. On the day after the indictments were returned, affidavits in support of search warrants were filed citing that a federal indictment was returned against the Defendant as justification for issuance of search warrants. In holding that the search warrants were defective, the Court stated:

> "The finding of probable cause for arrest of an individual that accrues from his being indicted does not, however, become the equivalent of a finding of probable cause for a warrant to search that person's home, his car, or his business office. Probable cause must likewise be shown for any of these searches (except of course, as regards a search incident to a lawful arrest). This distinction is the

> same as applies in the traditional warrant situation; the mere fact that probable cause has been shown that authorizes a proper warrant of arrest of an individual does not authorize the arresting officer to search beyond the limits of a search incident to that arrest... A specific showing of probable cause in addition to that shown for the arrest warrant is needed before this search may be properly authorized.

The United States argument that the subsequent arrest of the Defendant justifies the search of his computer has no validity.

Finally, the United States relies on the Supreme Court's ruling in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1084) which provided for an exception to the exclusionary rule for Fourth Amendment violations. While said case stands for the proposition that the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case in chief of evidence obtain by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid, the Court was clear that affidavits which knowingly or recklessly contain false information, or are the product of a less than neutral and detached magistrate or do not provide the magistrate with a substantial basis for determining the existence of probable cause, will not fall into the exception created by its decision.

In the case at bar, the magistrate issuing the search warrant did not have a substantial basis to determine probable cause and, therefore, *Leon, supra*, should not apply.

In conclusion, it is the position of the Defendant that the search warrants issued by Ritchie County Magistrate Haugh do not meet required constitutional standards and the evidence secured

therefrom should be suppressed and excluded from the United States case in chief against the Defendant in the above-styled matter.

Dated this __21st__ day of April, 2005.

George J. Cosenza - WV Bar No. 833
COSENZA & MERRIMAN, PLLC
515 Market Street - P.O. Box 4
Parkersburg, WV 26102
(304) 485-0990
**Counsel for Defendant**

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendant, **DANIEL WILSON TESTERMAN**, hereby certifies that he served the foregoing **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS** upon the Plaintiff, **UNITED STATES OF AMERICA**, by depositing a true copy thereof in the United States mail, postage prepaid, addressed to Sherry Muncie, Assistant United States Attorney, Clarksburg Federal Center, 320 West Pike Street, Suite 300, Clarksburg, West Virginia, 26301-2710 on this 21st day of April, 2005.

George J. Cosenza - WV Bar No. 833
COSENZA & MERRIMAN, PLLC
515 Market Street - P.O. Box 4
Parkersburg, WV 26102
(304) 485-0990
**Counsel for Defendant**