```
         IN THE UNITED STATES DISTRICT COURT       FILED
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                                                   JUN  6 2005
UNITED STATES OF AMERICA,
                                                U.S. DISTRICT COURT
              Plaintiff,                        CLARKSBURG, WV 26301

     v.                                         CRIMINAL NO. 1:05CR4
                                                    (Judge Keeley)

DANIEL WILSON TESTERMAN,

              Defendant.
```

## ORDER AFFIRMING REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS

Pending before the Court is the defendant's motion to suppress, filed on February 7, 2005. The Court referred this matter to Magistrate Judge John S. Kaull. On April 28, 2005, Magistrate Kaull issued a Report and Recomendation, recommending that the Court grant the motion in part and deny the motion in part. On May 11, 2005, the defendant filed objections to the Report and Recommendation. The Government responded to these objections on May 19, 2005. For the following reasons, the Court **AFFIRMS** the Report and Recommendation.

### I.  BACKGROUND

**A.   Underlying Facts**[1]

On January 5, 2005, the defendant, Daniel Testerman, was indicted by a grand jury in the Northern District of West Virginia.

---

[1] For the purposes of this motion, the material facts are undisputed.

-1-

ORDER

Stated generally, the four count indictment charged him with one count of knowingly possessing child pornography and three counts of knowingly receiving child pornography.

The alleged factual predicate for the child pornography charges stemmed from a state investigation into a sexual misconduct complaint lodged against Testerman. Amy Workman, Testerman's half sister, filed the complaint with the Department of Health and Human Services ("DHHS"), alleging that Testerman inappropriately touched Workman's three-year-old daughter, A.W. DHHS referred the complaint to Mike Kelly, a deputy with the Richtie County Sheriff's Department, who spoke to Workman about the allegations.

During Deputy Kelly's interviews, Workman explained the basis of her complaint. She also stated that she had received e-mails containing photos of a naked man. The man's face was not in the photos, and the sender identified himself as "Brad Taylor." Workman, however, identified the man in the photos as Testerman because of his wedding ring and the background of the pictures.

After taking Workman's sworn statement and personally viewing the emailed photos, Deputy Kelly consulted with Kevin Postlewait, an attorney appointed to fill in for the ailing Ritchie County Prosecuting Attorney. Postlewait advised Deputy Kelly to "do a complaint for harassment, like harassing phone calls." Postlewait's secretary then assisted Deputy Kelly in drafting the

US v. TESTERMAN                                                1:05CR4
## ORDER

search warrant application.

On August 27, 2003, Deputy Kelly presented a search warrant affidavit to Ritchie County Magistrate David Wayne Haugh. In pertinent part, the affidavit stated:

> Daniel Testerman did unlawfully, with intent to harass or abuse Amy Workman, by using a computer to make contact with the said Amy Workman, without disclosing his identity causing obscene material to be delivered or transmitted in violation of WVa Code 61-3C-14(a)(1) [sic], and that the affiant has cause to believe and does believe that property, designed and intended for use which is and has been used as a means of committing such criminal offense, kept, concealed, possessed, designed and intended for use which is and has been used in violation of the criminal laws of the State as evidence of a crime, namely, any and all records contained within any personal computer's hard drive and memory as well as all software which may have been used in connection with and to facilitate the above crimes is concealed in the residence of Daniel Testerman and Missy Testerman located at Route 1, Box 136 B, Washburn Street, Harrisville, WV 26362, being a one story vinyl sided home, yellow in color, with attached garage and the facts for such belief are that Amy Workman received several obscene photographs by e-mail. She recognized the person depicted in said obscene photographs as being Daniel Testerman.

Magistrate Haugh issued the search warrant on August 27, 2003, incorporating the same description of the property as found in the affidavit. Magistrate Haugh also issued a warrant for Testerman's arrest, charging him with "unlawfully and intentionally harass[ing] or abus[ing] another person or us[ing] a computer with the intent to harass or abuse, in violation of 61-3C-14(a)(1) [sic] of the West Virginia Code."

US v. TESTERMAN                                                1:05CR4
## ORDER

Deputy Kelly obtained another sworn statement from Workman on August 27, 2003, the day of the warrant's issuance. In that statement, Workman reiterated that, in December 2002, she received several nude photographs via email from a man she identified as Testerman. Her statement also indicated that she eventually responded to these emails, telling the sender that she did not want any more photos. Nonetheless, she stated that she subsequently received another photo.

Deputy Kelly and Deputy Doyle later went to Testerman's residence, where they seized a computer, monitor, scanner, keyboard, photo printer, mouse, digital camera, and eight diskettes. During the seizure, Testerman's wife came home and asked to see the nude photos sent to Workman. She confirmed that the man in the photos was Testerman.

After setting up the computer equipment in their office, the deputies eventually discovered that the computer contained a photograph of a very small girl performing oral sex on an adult male. Workman, who was present during the execution of the search, identified the girl as her three-year-old daughter. Deputy Kelly subsequently sought a second search warrant to seize the computer to search it for child pornography. Magistrate Harper issued the requested search warrant, and the identified records were seized.

US v. TESTERMAN                                                         1:05CR4
## ORDER

Pursuant to a third search warrant, officers seized certain bedding from Testerman's residence. The Government concedes that it will not attempt to use this evidence and does not oppose its suppression.

**B.   The Magistrate's Recommendation**

In his Report and Recommendation, Magistrate Judge Kaull found that the affidavit in support of the first search warrant was not sufficient to establish probable cause. Nonetheless, the Magistrate found that the officers' reliance on this search warrant was objectively reasonable under <u>United States v. Leon</u>, 468 U.S. 897 (1984). Likewise, he found that the second search, which was based upon the evidence discovered in the first search, was equally valid. Thus, he recommended that the Court deny the motion to suppress with respect to the computer records[2] seized pursuant to the first and second search warrants. Magistrate Kaull recommended granting the motion to suppress, however, with respect to the seized monitor, scanner, keyboard, photo printer, mouse and digital camera. He also recommended that the Court order the return of Testerman's computer and grant the motion to suppress with respect to the seizure of Testerman's bedding.

In his objections to the Magistrate's Recommendation,

---

[2] These records included the files located on the hard drive of Testerman's computer and the eight diskettes seized at his residence.

US v. TESTERMAN                                              1:05CR4
## ORDER

Testerman asserts that the Leon good faith exception should not apply to the disputed search warrants. Specifically, he contends that, when allegedly obscene materials are the object of a search, a judicial determination of the material's obscenity must be made before the issuance of a warrant. Secondly, he argues that "the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In its response to Testerman's objections, the Government essentially adopts the Magistrate's reasoning. Therefore, the only issue before this Court is whether the Leon good faith exception applies to the search warrants in this case.

## II. STANDARD OF LAW

The overriding purpose of the exclusionary rule is "to deter unlawful police conduct." Leon, 468 U.S. at 918. Therefore, "Leon teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated warrant,' unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 922 n.23). "This inquiry is objective in nature, depending upon the understanding of a reasonable officer in light of the totality of the circumstances." United States v. Dickerson, 166 F.3d 667, 694 (4th

US v. TESTERMAN 1:05CR4
## ORDER

Cir. 1999) (citation omitted), rev'd in part by Dickerson v. United States, 530 U.S. 428 (2000).

The good faith exception does not apply in the following four situations:

> 1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> 2) the magistrate wholly abandoned his detached and neutral judicial role;
>
> 3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> 4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995) (citing Leon, 468 U.S. at 923).

### III. ANALYSIS

#### A. Necessity of a Prior Judicial Determination of Obscenity

Citing Marcus v. Search Warrants, 367 U.S. 717 (1961), and its progeny, Testerman first argues that the Leon good faith exception should not apply because a judicial officer did not determine whether the seized material was obscene before the issuance of the first warrant. The Marcus line of cases established rigorous procedural safeguards for the seizure of allegedly obscene

US v. TESTERMAN                                                1:05CR4

## ORDER

materials in commercial circulation. See Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 62-64 (1989). In such circumstances, government seizure operates as a prior restraint and thus implicates unique First Amendment concerns. Heller v. New York, 413 U.S. 483, 491 (1973); Fort Wayne Books, 489 U.S. at 65 (noting the existence of "special rules applicable to removing First Amendment materials from circulation.").

Testerman's reliance on the Marcus progeny is misplaced. Those cases pertain to a narrow factual context in which the seizure of alleged obscenity "interrupt[s] the flow of expressive materials." Fort Wayne Books, 489 U.S. at 67; see Marcus, 367 U.S. at 723 (seizure of "approximately 11,000 copies of 280 publications" from newstands); Quantity of Copies of Books v. Kansas, 378 U.S. 205 (1964) (seizure of 1,715 books from a book distributor); Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636 (1968) (seizure of films from theater operator); Roaden v. Kentucky, 413 U.S. 496 (1973) (seizure of film from drive-in theater); Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979) (seizure of films from adult bookstore); United States v. Espinoza, 641 F.2d 153 (4th Cir. 1981) (seizure of magazines from retailer of sexually explicit goods).

By contrast, the seizure in this case only encompassed private documents and photographs stored on diskettes and a computer hard

US v. TESTERMAN                                                    1:05CR4
## ORDER

drive. No evidence indicates that Testerman publicly circulated this material. Therefore, no special procedural protections apply to validate the search.

Moreover, even if the Marcus cases are relevant, they do not unequivocally require a judicial determination of obscenity before seizure of allegedly obscene materials.

> The [Supreme] Court has never held, or even implied, that there is an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized. In particular, there is no such absolute right where allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution.

Heller, 413 U.S. at 488 (citations omitted). Finally, in the twenty years following the Leon decision, no court has held that the failure to make a judicial determination of obscenity categorically vitiates the good faith exception. Therefore, this Court finds that the traditional Leon rule applies in the case at bar.

**B.  Sufficiency of Probable Cause Indicia in the Affidavit**

Testerman alternatively argues that the initial affidavit, which supported the first warrant and prompted the second warrant, was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. He asserts that the affidavit is insufficient because of its "conclusory nature" and its "failure to describe the obscene material." To evaluate the merit of this

-9-

US v. TESTERMAN                                                  1:05CR4
## ORDER

contention, the Court must first consider the statutory basis for the affidavit and warrant. Under West Virginia Code section 61-3C-14a(a),[3]

> [i]t is unlawful for any person, with the intent to harass or abuse another person, to use a computer to:
>
> (1) Make contact with another without disclosing his or her identity with the intent to harass or abuse;
>
> (2) Make contact with a person after being requested by the person to desist from contacting them;
>
> (3) Threaten to commit a crime against any person or property; or
>
> (4) Cause obscene material to be delivered or transmitted to a specific person after being requested to desist from sending such material.
>
> For purposes of this section, "obscene material" means material that:
>
> (A) An average person, applying contemporary adult community standards, would find, taken as a whole, appeals to the prurient interest, is intended to appeal to the prurient interest, or is pandered to a prurient interest;
>
> (B) An average person, applying contemporary adult community standards, would find, depicts or describes, in a patently offensive way, sexually explicit conduct consisting of an ultimate sexual act, normal or perverted, actual or simulated, an excretory function, masturbation, lewd exhibition of the genitals or sadomasochistic sexual abuse; and

---

[3] Both Deputy Kelly and Magistrate Haugh erroneously cite this statute as section 61-3C-14(a), which does not exist. Nonetheless, the affidavit and the warrant clearly refer to section 61-3C-14a(a)(1), which only penalizes an individual who uses a computer to contact another without disclosing his identity and with the intent to harass or abuse.

-10-

US v. TESTERMAN                                                    1:05CR4
                                    ORDER
---

(C) A reasonable person would find, taken as a whole, lacks literary, artistic, political or scientific value.

In the case at bar, Deputy Kelly was the affiant for the search warrant and the lead agent in executing the subsequent search of Testerman's home. Deputy Kelly produced his affidavit after performing an independent investigation of Workman's allegations about Testerman's alleged emails. Cf. United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996) (refusing to apply the good faith exception to a search warrant that relied upon "bare bones affidavit," which merely recited an informant's uncorroborated conclusions). The affidavit identified Testerman's residence as the place to be searched for certain computer records and equipment. It also indicated that Workman received "obscene photographs by email" and that she "recognized" the person in the photographs as Testerman. Thus, it is reasonable to infer that the emails did not disclose Testerman's identity and were otherwise unsolicited. See Illinois v. Gates, 462 U.S. 213, 235 (1983) (noting that a magistrate can make reasonable inferences from the materials supplied by an applicant for the warrant). Accordingly, the affidavit was not conclusory, but rather contained significant indicia of probable cause--particularly with respect to an alleged violation of section 61-3C-14a(a)(1).

The Court further finds that the affidavit's failure to

describe the allegedly obscene material is largely irrelevant. The affidavit confuses two distinct crimes by merging the elements of section 61-3C-14a(a)(1), which forbids harassing contact from an unidentified source, and section 61-3C-14a(a)(4), which forbids the harassing and unwanted transmission of obscene material. As noted above, however, the affidavit provided an independent basis for probable cause under section 61-3C-14a(a)(1), and the computer transmission of obscenity is not an element of that crime. Therefore, Deputy Kelly could reasonably rely on the affidavit without a detailed description of the alleged obscenity. The Court thus finds that Deputy Kelly's affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

Finally, Testerman proffers no evidence suggesting that Deputy Kelly (or any other participating law enforcement officer) acted in bad faith in applying for or executing the warrant. To the contrary, Deputy Kelly consulted the prosecutor's office before seeking the warrant, which "provides additional evidence of his objective good faith." Bynum, 293 F.3d at 198. Magistrate Kaull also found Deputy Kelly to be "completely credible." Moreover, the evidence indicates that the inartful drafting of the affidavit was an innocent mistake. Therefore, in accord with Magistrate Kaull's recommendation, the Court concludes that Deputy Kelly's reliance on

US v. TESTERMAN                                                   1:05CR4

**ORDER**

the search warrants was objectively reasonable in light of the totality of the circumstances.

### IV. CONCLUSION

For the above reasons, the Court concludes that the evidence obtained in the search of Testerman's home is admissible pursuant to the good faith exception to the exclusionary rule. Therefore, the Court **AFFIRMS** the Magistrate's Report and Recommendation and **OVERRULES** Testerman's objections. As such, the Court **ORDERS** the following:

- Testerman's motion to suppress is **DENIED IN PART** with respect to the computer records seized pursuant to the first and second search warrants (i.e., the diskettes and the computer's hard drive) and **GRANTED IN PART** with respect to his monitor, scanner, keyboard, photo printer, mouse, and digital camera.

- The Government shall return Testerman's CPU after seizure of its contents.

- Testerman's motion to suppress evidence seized in the third search is **GRANTED.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record via facsimile and U.S. mail.

DATED: June ___6___, 2005.

_Irene M. Keeley_
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

-13-