UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF WEST VIRGINIA

**FILED**

DEC 1 2009

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

| | |
|---|---|
| DANIEL WILSON TESTERMAN,<br><br>Petitioner,<br><br>VS<br><br>UNITED STATES OF AMERICA,<br><br>Respondent | Criminal No. 1:05CR4<br><br>Civil No.: 1:09CV74<br><br>TRAVERSE<br>EVIDENTIARY HEARING REQUESTED |

DANIEL WILSON TESTERMAN'S

TRAVERSE

Petitioner DANIEL WILSON TESTERMAN, by way of Traverse to Respondent's Answer, alleges as follows:

INTRODUCTION

Agree as to statements in Introduction of Respondent's Answer.

FACTS

Agree in part to statements in Facts. Petitioner admits that he was sentenced to 108 months and is in custody. However, Petitioner contends that his custody is "unlawful" for the reasons set forth herein and in the Petition for Writ of Habeas Corpus. Additionally, Petitioner contends that the picture of a naked man referenced by Respondent is not him and that the Motion to Suppress wherein search warrant was challenged was denied in part and granted in part by Magistrate John S. Kaull. (See Attachment A Page 23)

MEMORANDUM OF LAW

All four grounds raised in Writ of Habeas Corpus were the result of ineffective assistance of counsel and should not be procedurally barred because they were not raised on direct appeal. *KAUFFMAN V. US* states that "Federal Habeas Corpus relief is not to be denied to prisoners alleging constitutional deprivations solely on the ground that relief should have been sought by appeal"

<u>DISCUSSION OF GROUNDS</u>

Petitioner contends that he is entitled to relief on the following grounds, as set forth in the Petition:

Ground One: The Government failed to prove the element of shipping or transport of the images "in interstate commerce," where it presented no evidence that the images crossed state lines. Even Supernodes, as described by Melinda Cash, can be within the boundaries of a state border.

*U.S. v. Schaefer*

"We do not read § 2252(a) as contemplating that the mere connection to the Internet would provide the interstate movement required by the statute. After establishing a computer or Internet connection as the method of transport, the government must still prove that the Internet transmission also moved the images across state lines. For example, by comparison, we cannot find any precedent supporting the notion that showing a defendant "shipped" a proscribed image, without more, satisfies the statutory requirement. The government must couple such evidence with proof the defendant shipped the image across state lines (i.e., in interstate commerce).

*U.S. v. Schaefer*, 501 F.3d 1197, C.A.10 (Kan.); See, also *United States v. Schatt*, No. 99-6317,

2000 WL 358460, * 2 (10th Cir. 2000).

Additionally, in his closing arguments, prosecutor testified that some of the images at issue originated from Brazil. He offered no explanation, however, as to how those particular images found their way to the hard drive in defendant's possession. Nor did the prosecution otherwise attempt to outline the possible methods by which defendant could have obtained the files through interstate commerce (e.g., downloading copies of the images from an out-of-state computer via the internet, making any connections outside the state of West Virginia, virus, etc.) Testimony alone is not sufficient to prove jurisdiction. The internet by itself does not prove interstate commerce.

*United States v Wilson*

"We therefore reject the possibility that Daufenbach's testimony regarding the origination of the images, standing alone, was sufficient to satisfy the jurisdictional element."

United States v Wilson 182 F.3d 737 (10th Cir. 1999).

An evidentiary hearing is requested to further discuss the issue of jurisdiction and whether defendant's computer made any connections outside the state of West Virginia to produce, upload, download, ship, receive, or transport the images in the charges.

Ground Two: Usage of suppressed evidence during trial after decision by Magistrate John S. Kaull stating "Defendant's Motion to Suppress the CPU, but not its contents (the files contained in its hard drive and diskettes, be GRANTED." In Governments case, computer was listed as Government's Exhibit 43

which was the tower, or CPU, which was suppressed. This CPU was used and referred to many times during trial.

Ground Three: Lack of investigation by trial attorney on defendant's behalf. This was ineffective assistance of counsel and violated Petitioners Sixth Amendment right to a fair trial. No virus scan ordered which may have produced evidence of innocence. Trojan horses and viruses are infamous for their capabilities to drop porn onto a victim's computer or change victim's homepage to a porn site without victim's knowledge or consent. Petitioner does not ignore all testimony throughout the trial but notes that it was circumstantial. As stated by Honorable Judge Irene Keeley on sentencing day (See Attachment B), the Governments case was circumstantial.

Ground Four: Prosecutors mislead jury in closing arguments. Prosecutor stated in closing argument that defendant was computer savvy and that he had expertise in computers. He failed to produce any evidence suggesting that defendant is in any way expert in computers. (e.g., certificates, certifications, degree, etc.)

Prosecutor also made statement in rebuttal closing argument that defendant was circumcised.

> "The defense says that you can see from this picture that he's been circumcised."

This is false information. This was misleading to the jury because the figure in the image that was allegedly emailed to Amy Workman is circumcised and defendant is not. These were the last words the jury heard before they went to deliberate. This statement by the prosecutor may have caused some confusion in the jury's minds and therefore resulted in unreliable verdict. An evidentiary hearing is requested to elaborate on this issue.

Grounds 1, 3 and 4 should not be procedurally barred simply because they were not raised on appeal. The reason they were not raised on appeal is a result of ineffective assistance of counsel where attorney did not have proper knowledge or training to know to raise the issues. Trial attorney is not certified in computers nor does he possess extensive knowledge about computers or their operation therefore he did not know how to raise these issues. Since Appellate counsel was also trial counsel, he was unable to argue his own ineffectiveness on appeal. Therefore, the court must, as a necessity, review the ineffectiveness claim *de novo*.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment right to counsel protects "the fundamental right to a fair trial."

Strickland v. Washington (1984), 466 U.S. 668. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. Effective counsel is one who "plays the role necessary to ensure that the trial is fair," Id. and "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id.

Child pornography cases involving computers require a solid understanding of the operation of computers, the working of software, the internet and computer hardware. At a variety of points during the trial, trial counsel either failed to object or failed to inquire of witnesses regarding issues material to defendant's guilt or innocence. He also failed to bring to the court's attention the contamination of the key evidence in

this matter by law enforcement by way of motion or objection. The evidence used against the defendant was indisputably contaminated by its mishandling by law enforcement.

A. Testimony of Deputy Kelly

At T.R. 137, Deputy Kelly admitted turning on defendant's computer and Ms. Workman's computer searching through it to find evidence. Trial counsel failed to point this out in his cross examination, more importantly in any pre-trial motion, that Kelly's conduct undoubtedly destroyed evidence, likely destroyed exculpatory dates associated with relevant and indicted files and compromised the entire computer as reliable evidence. Appx. Pg 5. No pre-trial motions were made on this point and no questions posed to this witness to expose this critical destruction and contamination of relevant evidence - in fact, it was evidence relied upon by the government even after its indisputable alteration by Kelly.

B. Testimony of Deputy Backus

Deputy Backus at T.R. 158 describes his contamination of critical evidence from Amy Workman's computer that the government later offered at trial. "At that point, I had sat down at the computer. Amy and Mike Kelly was behind me in the same room. I opened up the window search program and typed in Amy's pic of me, keywords, and that file appeared with a preview, small picture, of a naked male subject." T.R. at 158, Appx pg 17. This conduct by a non-expert undoubtedly altered access dates related to those images. This conduct is akin to stomping through a crime scene with muddy boots before the forensic experts have concluded their careful gathering of trace evidence. Trial

counsel failed to ask a single question of this witness despite his admission to altering key evidence in the case. This is not a mere tactical decision. It represents a fundamental misunderstanding of the operation of a computer and the data associated with files, especially those critical to the government's case in this matter. If the original access date, creation date and modification date of the indicted files were identical, it is technological proof that the defendant, as he maintained throughout the case, did not open or see any contraband files on his computer.

Federal child pornography statutes have no exception for possession of such material even if done for recognized judicial purposes. See 18 U.S.C. 2252 and 2252(A), et seq. That lack of exception prohibits defense counsel and defense experts from performing tasks necessary to an effective defense in such cases. Trial counsel failed to recognize this restriction and present that issue to the trial court in the form of a motion regarding an obvious fair trial issue. This issue has been raised in several other courts resulting in dismissals of entire criminal cases involving contraband image and video cases. Ohio v. Brady 2007-Ohio-1779 Ohio v. Lescalleet 06-CR-I-06-207 (Delaware County).

The Sixth Amendment right to counsel protects "the fundamental right to a fair trial."

Strickland v. Washington (1984), 466 U.S. 668. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." (Id).

"Whatever disagreement there may be as to the scope of the phrase "due process of law" there can be no doubt that it embraces the fundamental

conception of a fair trial, with opportunity to be heard." U.S. Supreme Court Justice Oliver Wendell Holmes in Frank v Mangum, 237 U.S. 309, 347 (1915). "[J]ustice must satisfy the appearance of justice." Offutt v. United States [1954], 348 U.S. 11.

The government in this case performed, or had the option to perform, a range of evidence gathering tasks in preparation for hearings and trial. (See below). Defense counsel and defense experts were unable to perform (presuming they were aware these tasks were necessary) any of those tasks as they are prohibited by 18 U.S.C. 2252, et seq.

In federal child pornography prosecutions, *government* digital imaging experts have testified in both pre-trial hearings and at trial. United States v. Hill, Case No. 4:04CR57 (Eastern District of Texas); United States v. Watzman, Docket No. 03 CR 1032 3, (Eastern Division of Illinois); United States v. Fuller, 77 Fed. Appx. 371 (6th Cir. 2003). The government has also provided digital image exhibits to support their arguments and witness testimony in those cases. In federal child pornography prosecutions *defense* digital imaging experts have testified in both pre-trial hearings and at trial. See Hill and Watzman. Those defense counsel and experts provided digital image exhibits supporting their testimony. In state cases, courts and juries rely upon defense digital imaging testimony and digital image exhibits. Ohio v. Sparks CR-2002-12-3669 (2004, Summit County, Ohio); Ohio v. Simms 2003 CR 98 (2004, Columbiana County, Ohio); Ohio v. Tooley C03CR 0547 (2004, Portage County, Ohio); Ohio v. Huffmann B-0401503 (2004, Hamilton County, Ohio), Ohio v. Beam, 04-CR-00379 (2005, Clermont County, Ohio).

Under federal law, the conduct above violates 18 U.S.C. 2252 and 2252(A) *only if* performed by defense counsel or its experts even in preparation for this trial. The tasks constitute violations of federal child pornography statutes related to possession, transportation, reproduction and receiving.

For example, defendant cannot confirm the origin of the indicted items. To do so involves using the filenames of those items and seeking information about them on the Internet and perhaps elsewhere. That search risks the unintentional downloading of alleged contraband images from websites. Such research, however, could result in locating the origin of the indicted items and proof they are not, in fact, contraband. That origin could be from websites including disclaimers indicating the items were created using adults and not minors. That information is obviously relevant and admissible at trial. Therefore, 18 U.S.C. 2252 and 2252(A) prevents defense from challenging the government's claims regarding the indicted items.

Trial counsel did not prepare or use a digital imaging expert in this case. Such an expert would have educated the trial court and the jury about the malleability of digital images. Even if trial counsel had known to seek out and use such an expert witness, to challenge the government's assertion the seized images were violative of the statute he would have been somewhat thwarted by the application of the federal statute solely to defense experts of that type. Such an expert could easily have created and used digital image exhibits in the cross examination of some of the government's witnesses. Such impeachment exhibits are not required to be provided to the government in discovery. The expert could have used, as has been used in the cases cited

above, other digital image exhibits as exhibits to various pre-trial motions and related hearings. The expert or trial counsel had he known, could have provided testimony at pre-trial motion hearings regarding the value of such work and how its prohibition negatively affected the expert's ability to do his job and inform counsel about the state of technology and the nature of the government's evidence. The government's evidence in this case, apparent child pornography, are items it claimed (and trial counsel improperly conceded) are real child pornography. It had no restriction on its ability to copy those items, distribute them to agents, counsel and experts and regularly confer on them and refer to them preparing for trial. Defense counsel was completely deprived of that significant advantage. The government regularly chooses to exercise its enforcement discretion to the benefit of state law enforcement and *private citizens* who are hired by the state to assist them in child pornography cases.

For example, in several Ohio child pornography cases, state prosecutors have hired Dr. Hany Farid, a professor from Dartmouth University. See Ohio v. Heilman, 2003 CRB 458; Ohio v. Brady and Ohio v. Harrison, 2005-CR-10-099. In each of those cases, the state prosecutors transported alleged child pornography in interstate commerce to Farid. (A violation of 18 U.S.C. 2252 and 2252(A) for which there is no exception). Farid received the alleged child pornography images in interstate commerce. (Another violation of 18 U.S.C. 2252). He possessed the alleged child pornography in those cases during his review and analysis of it to prepare his expert report. (A third violation of 18 U.S.C. 2252). Farid and the state of Ohio violated federal law on no less than nine occasions in just those three cases alone. The federal government exercised its discretion to *not* investigate, search,

arrest or indictment anyone in connection with those violations. In fact, Farid is a regular speaker at training seminars for federal law enforcement. Defense counsel and its experts expect no such benefit from the exercise of the government's discretion in this case.

As such, states and the federal government have transported across state lines, alleged contraband for its experts to analyze. There is no exception in the federal statute for such transportation to possession by a private citizen even when performed by the federal government. To date there is no record of any private citizen expert witness for the state or government having a search conducted of his home and person related to his work as a digital imaging expert witness for the government in a child pornography case. This is all true despite the fact state prosecutors and federal prosecutors and their experts' conduct can be or is often *identical to the conduct prohibited to be performed* by defendant's counsel and digital imaging experts. Trial counsel was ineffective for failing to bring this unconstitutional circumstance to the attention of the trial court. As a result, this court has no evidentiary material from those neglected matters and unrequested hearings by which to consider the fair trial issue.

The government may argue that what effective counsel for defendant would have done is not required in order for defendant to obtain a fair trial. That argument fails when compared the government's preparation and use of its own private citizen and law enforcement experts. It also fails because the defense cannot be limited to performing tasks that the government deems "necessary."

The margin of victory in defense cases is often marked by the completion of tasks that the government chose not to embark upon or deemed "unnecessary."

The chill on the defense in this case should have been obvious to trial counsel, but it was not.

Defendant lost his liberty in the murkiest and most unbalanced of arenas imaginable. He could not effectively contest the evidence and trial counsel appeared unaware of that limitation such that he did not move the court to address it. He could not impeach the government's witnesses who testified about or relied upon the charged items. He could not investigate the evidence. He could not prepare effective digital imaging trial exhibits. He could not get the services of an effective computer forensics expert even had trial counsel realized that one could have been useful on other issues. He was utterly without recourse except to sit and watch an inexorable march to conviction with his hands already handcuffed behind and the presumption of innocence an empty platitude.

Petitioner's belief that he did not get a fair trial is reasonable. Even if this court believes these motions would not have been well taken by the trial court, defendant was still entitled to effective counsel who would have filed these motions preserving his appellate rights beyond this court.

CONCLUSION

Based on the foregoing, Petitioner should be granted an evidentiary hearing on his claims, and the Petition of Habeas Corpus should ultimately be granted.

Dated November 25, 2009

Respectfully submitted,

*Daniel Testerman*

Daniel Wilson Testerman

## TIMELINESS OF TRAVERSE

ORDER DIRECTING RESPONDENT TO ANSWER Filed 7/28/09

UNITED STATES' RESPONSE TO 2255 PETITION Filed 8/25/09

PETITIONER RECEIVED RESPONSE Postage date 11/16/09 (See attached image copy of envelope)

PETITIONER TRAVERSE Sent out by Certified Mail 11/25/09