Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 1 of 24   PageID #: 419
Case 1:05-cr-00004-IMK    Document 26    Filed 04/28/2005    Page 1 of 24
ATTACHMENT A  Page1 of 24  11/25/2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       **Plaintiff,**

*vs.*                                       **CRIMINAL ACTION NO.  1:05CR04**

DANIEL TESTERMAN,

       **Defendant.**

## REPORT AND RECOMMENDATION DENYING MOTION TO SUPPRESS/OPINION

On the 7th day of February, 2005, Defendant, Daniel Wilson Testerman, through counsel, George J. Cosenza, filed a Motion to Suppress and Memorandum in Support [Docket Entry 5]. On March 2, 2005, the United States Attorney, through his Assistant United States Attorney, Sherry L. Muncy, filed a Response to Defendant's Motion [Docket Entry 19]. On February 14, 2005, the matter was referred to the undersigned United States Magistrate Judge by Chief United States District Judge Irene M. Keeley [Docket Entry 12]. The hearing on pre-trial motions was originally scheduled for February 23, 2005, but was continued by Order of the Court on several occasions, upon motion by both parties, due to Defendant's counsel's trial schedule and the United States' chief witness' heart surgery.

On April 13, 2005, came the Defendant, Daniel Testerman, in person, and by his counsel, George J. Cosenza, and also came the United States by its Assistant United States Attorney, Sherry L. Muncy, for hearing on Defendant's Motion to Suppress.

### Statement of Facts

Defendant Daniel Wilson Testerman was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on January 5, 2005. The four-count indictment charges Defendant with knowingly possessing material, that is, a computer containing

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 2 of 24   PageID #: 420
Case 1:05-cr-00004-IMK   Document 26   Filed 04/28/2005   Page 2 of 24

ATTACHMENT A   Page2 of 24   11/25/2009

graphic image computer files of child pornography which had been shipped and transported in interstate and foreign commerce by means that included a computer (Count One); and knowingly receiving child pornography which had been shipped and transported in interstate and foreign commerce (Counts Two, Three, and Four).

A Summons was issued, and Defendant was arraigned and pled "not guilty" on January 20, 2005.

The testimony at the Suppression Hearing was as follows:

Mike Kelly, a Deputy with the Ritchie County Sheriff's Department, was given a referral by the Department of Health and Human Services ("DHHS") regarding a complaint of child safety. The Complaint alleged that the defendant had inappropriately touched his three-year-old niece, herein referred to as A.W. The complainant was Amy Workman, the child's mother, who was also the defendant's half sister, she and Defendant having the same father. Deputy Kelly first spoke with Ms. Workman by telephone, and she later went to the Sheriff's office. She told him about the allegations regarding her child. She also informed Deputy Kelly that she had been receiving e-mails containing naked photos of a male she believed to be Defendant. The e-mailer identified himself as Brad Taylor, and his face was not in the photos, but Ms. Workman identified him as Daniel Testerman from the background of the photos, which she told Deputy Kelly she recognized as Defendant's trailer. She also said she recognized the wedding ring on his finger.

Ms. Workman also informed Deputy Kelly that her three-year-old daughter came home in December 2002, and said "she saw Uncle Daniel's tail." At that time the mother said she believed the child must have walked in on the defendant using the bathroom. She told Deputy Kelly that on August 16, 2003, the child told her she "worked on the trailer with Daniel and played with his

2

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 3 of 24   PageID #: 421
Case 1:05-cr-00004-IMK      Document 26      Filed 04/28/2005      Page 3 of 24

ATTACHMENT A   Page3 of 24   11/25/2009

'toy.'" She described the "toy" and showed how she played with it by making a back-and-forth

motion with her hand, and then he "peed." She also said that Daniel touched her butt and then she

had to pull her panties and shorts up. She said it hurt when he touched her.

Deputy Kelly typed out Amy Workman's sworn statement, which she then signed. Deputy

Kelly went to Amy Workman's home and viewed the e-mailed photographs.

Deputy Kelly testified that the Ritchie County Prosecuting Attorney was seriously ill during

this time, and Kevin Postlewait was appointed for a few months to fill in. The Deputy had a difficult

time finding a prosecutor with whom to consult. He spoke to Mr. Postlewait, who said the Deputy

should "do a complaint for harassment, like harassing phone calls." Mr. Postlewait did not

participate in drafting the search warrant, but his secretary assisted Deputy Kelly. On August 27,

2003, Deputy Kelly appeared at the office of Ritchie County Magistrate David Wayne Haugh. He

presented a search warrant affidavit to the magistrate. The affidavit stated in pertinent part:

> Daniel Testerman did unlawfully, with intent to harass or abuse Amy Workman, by
> using a computer to make contact with the said Amy Workman, without disclosing
> his identity causing obscene material to be delivered or transmitted in violation of
> WVa Code 61-3C-14(a)(1), and that the affiant has cause to believe and does believe
> that property, designed and intended for use which is and has been used as a means
> of committing such criminal offense, kept, concealed, possessed, designed and
> intended for use which is and has been used in violation of the criminal laws of the
> State as evidence of a crime, namely, any and all records contained within any
> personal computer's hard drive and memory as well as all software which may have
> been used in connection with and to facilitate the above crimes is concealed in the
> residence of Daniel Testerman and Missy Testerman located at Route 1, Box 136 B,
> Washburn Street, Harrisville, WV 26362, being a one story vinyl sided home, yellow
> in color, with attached garage and that the facts for such belief are that Amy
> Workman received several obscene photographs by e-mail. She recognized the
> person depicted in said obscene photographs as being Daniel Testerman.

Magistrate Judge David Haugh issued the search warrant on August 27, 2003. The search

warrant's identification of the property was identical to the description in the affidavit, and

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 4 of 24   PageID #: 422
Case 1:05-cr-00004-IMK      Document 26      Filed 04/28/2005      Page 4 of 24

ATTACHMENT A   Page 4 of 24   11/25/2009

commanded:

> You are therefore, commanded in the name of the State of West Virginia to search forthwith the computer above described and all appurtenances appertaining thereto for the propery above specified, to seize such property and bring the same before me to be dealt with according to law.

Concurrently with the search warrant, Deputy Kelly also filed a Criminal Complaint with Magistrate

Haugh, charging Defendant with "unlawfully with intent to harass or abuse Amy Workman by using

a computer to make contact with the said Amy Workman, without disclosing his identity causing

obscene material to be delivered," in violation of 61-3C-14(a)(1).  Magistrate Haugh issued a State

Warrant for Arrest of Defendant, charging him with "unlawfully and intentionally harass[ing] or

abus[ing] another person or us[ing] a computer with the intent to harass or abuse, in violation of 61-

3C-14(a)(1) of the West Virginia Code.

West Virginia Code § 61-3C-14a[1] provides as follows, in pertinent part:

> (a) It is unlawful for any person, with the intent to harass or abuse another person to use a computer to:
> (1) Make contact with another without disclosing his or her identity with the intent to harass or abuse;
> (2) Make contact with a person after being requested by the person to desist from contacting them;
> (3) Threaten to commit a crime against any person or property; or
> (4) Cause obscene material to be delivered or transmitted to a specific person after being requested to desist from sending such material.
> For purposes of this section, "obscene material" means material that:
> (A) An average person, applying contemporary adult community standards, would find, taken as a whole, appeals to the prurient interest, is intended to appeal to the prurient interest, or is pandered to a prurient interest;
> (B) An average person, applying contemporary adult community standards, would find depicts or describes, in a patently offensive way, sexually explicit conduct consisting of an ultimate sexual act, normal or perverted, actual or simulated, an excretory function, masturbation, lewd exhibition of the genitals, or sadomasochistic

---

[1]The undersigned will address the error regarding the identification of the Code section itself later in this Opinion.

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 5 of 24   PageID #: 423
Case 1:05-cr-00004-IMK   Document 26   Filed 04/28/2005   Page 5 of 24
ATTACHMENT A   Page5 of 24   11/25/2009

sexual abuse; and
(C) A reasonable person would find, taken as a whole, lacks literary, artistic, political
or scientific value.

Deputy Kelly spoke with Amy Workman again that same day, getting another sworn statement from her. Ms. Workman told the Deputy that sometime during December 2002 she received several nude photographs of a man on her e-mail. He used the name Brad Taylor. The man wrote that if she liked the pictures he would send more. At first she did not respond, but the man kept sending more pictures. She told Deputy Kelly she finally wrote back and told the man she did not want any more photos, but he subsequently sent one more photo. Ms. Workman told the Deputy she recognized the man's wedding ring and the background in the photos, and identified him as Daniel Testerman.

He and Deputy Doyle went to the residence of Defendant and his wife. They took the computer and carried it out. While they were doing so, Defendant's wife came home and asked to see the photos. The deputies showed her the photos of the naked man, and she said, "that's him." The deputies took the computer. The property receipt shows they took the CPU, monitor, scanner, keyboard, photo printer, mouse, digital camera, and eight diskettes. Deputy Kelly testified he had never executed a search warrant involving a computer before. He was not "computer literate." He believed that he needed to take the entire computer in order to seize the property ordered in the warrant. He testified that the computer was "all hooked together" and he believed he needed all of it in order to see the photos.

The deputies set up the computer in their office. Defendant's wife was in the room at the time, as was Amy Workman and her mother and sisters. While the deputy was taking Defendant's statement in another room, someone in the office screamed. He ran to the office, where he found

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 6 of 24   PageID #: 424
Case 1:05-cr-00004-IMK    Document 26    Filed 04/28/2005    Page 6 of 24
ATTACHMENT A   Page6 of 24   11/25/2009

Amy Workman and her mother hysterical and "out of control." There was a photograph on the computer screen of a very small girl performing oral sex on an adult male. Amy Workman told the deputies the little girl in the photo was her three-year-old daughter, A.W.  Deputy Kelly testified Defendant's wife also looked at the photo and said, "oh my God, no wonder he didn't have anything to do with me!"

After seeing the photos of the child, Deputy Kelly again contacted the Prosecuting Attorney's office for assistance putting together a second search warrant to seize the computer in order to search it for child pornography.  There is no dispute that the computer was already in his custody. He thought it prudent to obtain a second search warrant since the first was for the photos of the naked man that were sent to Amy Workman, and not for child pornography.  The Ritchie County Magistrate on duty at this time was Teresa Harper.  Deputy Kelly's affidavit in support of the second search warrant was as follows:

> That between December ___, 2002, and August 20, 2003, and prior to the making of this Complaint, in the said County of Ritchie, Daniel Testerman, did unlawfully and feloniously engage in sexual contact and sexual intrusion with A.D.W. while she was under his care, custody or control in violation of WVa Code 61-8D-5(a), and that the affiant has cause to believe and does believe that property, kept concealed, which is and has been used in violation of a crime, namely, any and all internal records contained within the hard drive and memory as well as all software of that certain emachine etower 600is personal computer Serial Number: QAA09E0061191 relating to children engaged in sexual activity or any other crime and that the facts for such belief are that after obtaining a Search Warrant to search for the photographs e-mailed to Amy Workman, the said Amy Workman identified her three year old daughter, A.D.W., as one of the images depicted on the computer engaged in sexual activity with an adult male.

Magistrate Harper issued the Search Warrant which commanded the search of "the computer above described and all appurtenances appertaining thereto for the property above specified, to seize such property and bring the same before me to be dealt with according to law."

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 7 of 24   PageID #: 425
Case 1:05-cr-00004-IMK   Document 26   Filed 04/28/2005   Page 7 of 24
ATTACHMENT A   Page7 of 24   11/25/2009

Concurrently with the Search Warrant, Magistrate Harper also issued an arrest warrant for Defendant, charging him with "unlawfully, feloniously, and intentionally engag[ing] in sexual contact with a child under his care while he was acting as the child's custodian, in violation of Chapter 61, Article 8D, Section 5(a) of the Code of WEST Virginia [sic.]"[2]

A third search warrant was issued for certain bedding, pursuant to which bedding was seized from Defendant's residence.

### Contentions of the Parties

Defendants contends:

1) The affidavit in support of the issuance of the first search warrant does not establish probable cause or sufficient grounds for the issuance of said warrant.

2) The law enforcement officers conducting the search seized property not authorized by the warrant.

3) The second search warrant fails to describe the place to be searched.

4) The affidavit used to support the issuance of the above-cited search warrant is based upon the issuance of the previous search warrant, which was in violation of West Virginia law.

5) The affidavit used to support the third search warrant is based upon the issuance of the first search warrant which was in violation of West Virginia law.

6) The search warrant only authorized the seizure of a computer, not a "bedding light in color

---

[2]Under cross examination, Deputy Kelly testified he was aware the charges against Defendant for inappropriate contact with A.W. were dismissed, and he was never prosecuted further. Defendant was apparently tried in State court on the child pornography charges, but a mistrial was declared at the conclusion of the prosecuting attorney's opening statement. The State charges were subsequently dropped in favor of the present Federal charges. Deputy Kelly testified he was unaware that Amy Workman had since recanted much of the allegations regarding A.W.

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 8 of 24   PageID #: 426
Case 1:05-cr-00004-IMK     Document 26     Filed 04/28/2005     Page 8 of 24
ATTACHMENT A   Page8 of 24   11/25/2009

with tan or yellow cartoon animals, believed to be a lion."

The United States contends:

    1) The issuance of Warrant 1 was supported by probable cause.

    2) The law enforcement officers conducting the search seized property authorized by the warrant.

    3) The second search warrant described the place to be searched.

    4) The affidavit for the second search warrant was based upon evidence obtained pursuant to the first search warrant, which was properly issued after a finding of probable cause.

    5) The Government will not attempt to use any evidence obtained as a result of the third search warrant and therefore does not oppose its suppression.

    6) Even assuming, *arguendo*, that the magistrate erred in finding probable cause to issue the search warrants, the evidence obtained therefore is still admissible under *United States v. Leon*, 468 U.S. 897 (1983).

### Discussion

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion."

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 9 of 24   PageID #: 427
Case 1:05-cr-00004-IMK   Document 26   Filed 04/28/2005   Page 9 of 24
ATTACHMENT A   Page9 of 24   11/25/2009

*Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." There is probable cause to search a home if there is a fair probability that evidence of a crime is located within the residence. *See United States v. Murphy,* 241 F.3d 447, 457 (6th Cir. 2001). Whether probable cause exists must be determined "under the totality of the circumstances." *See Illinois v. Gates,* 462 U.S. 213 (1983).

In a review of an issued search warrant, "great deference" is given to the issuing judicial officer's probable cause determination. *United States v. Blackwood,* 913 F.2d139, 142 (4th Cir. 1990). The test on review is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. *Massachusetts v. Upton,* 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a *de novo* review but instead limits itself to the information presented to the magistrate who issued the warrant. *Id. See also United States v. Wilhelm,* 80 F. 3d. 116, 118 (4th Cir. 1996).

The determination of whether Ritchie County Magistrate Haugh had probable cause to issue the warrant to search is made by answering the question: From a totality of the circumstances presented to the issuing judge, was there "a fair probability that contraband or evidence of a crime" would be found in Daniel Testerman's residence? *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

**The First Search Warrant**

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 10 of 24   PageID #:
Case 1:05-cr-00004-IMK      Document 126     Filed 04/28/2005      Page 10 of 24
ATTACHMENT A  Page10 of 24   11/25/2009

Defendant here first argues the affidavit in support of the first search warrant did not

establish probable cause or sufficient grounds for the issuance of the warrant. In support of this

argument, Defendant contends the  affidavit alleges only that Amy Workman received several

obscene photographs by email and that she recognized the person depicted in the photographs as the

defendant. The affidavit does not, however, set forth the nature of the photographs or how they were

obscene; fails to state the date the e-mails were sent or received; fails to state where the e-mails

originated or that they were sent from a computer located in the Defendant's home; and the

allegations do not support that a crime had been committed at all because West Virginia Code 61-

3C-14(a)(1) does not exist, and 61-3C-14a(a)(1) makes it unlawful for any person with the intent

to harass or abuse another person to use a computer to make contact with another without disclosing

his or her identity.  Again, 61-3C-14a provides as follows:

> (a) It is unlawful for any person, with the intent to harass or abuse another person to
> use a computer to:
> (1) Make contact with another without disclosing his or her identity with the intent
> to harass or abuse;
> (2) Make contact with a person after being requested by the person to desist from
> contacting them;
> (3) Threaten to commit a crime against any person or property; or
> (4) Cause obscene material to be delivered or transmitted to a specific person after
> being requested to desist from sending such material.

The affidavit alleges:

> DANIEL TESTERMAN, did unlawfully, with intent to harass or abuse AMY
> WORKMAN, by using a computer to make contact with the said AMY
> WORKMAN, without disclosing his identity causing obscene material to be
> delivered or transmitted in violation of Wva Code 61-3C-14(a)(1).

Defendant is correct that 61-3C-14(a)(1) does not exist, and the correct statute is 61-3C-14a(a)(1).

Further, the paragraph in the affidavit which is under scrutiny combines (a)(1) with (a)(4).  Even

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 11 of 24   PageID #:
Case 1:05-cr-00004-IMK      Document 126    Filed 04/28/2005    Page 11 of 24
ATTACHMENT A   Page 11 of 24   11/25/2009

considering both subsections of the correct statute, however, the facts alleged in the affidavit alone

do not support the alleged violation(s). Here, the factual basis for the warrant, as contained in the

Affidavit and Complaint for Search Warrant are as follows:

> [T]he facts for such belief are that AMY WORKMAN received several obscene
> photographs by e-mail.   She recognized the person depicted in said obscene
> photographs as being DANIEL TESTERMAN.

There is no statement that the person sending the e-mails did not disclose his identity, as required

by (a)(1). There is also no statement that the sender continued to deliver obscene material to Amy

Workman after being asked to desist, as is required by (a)(4). The undersigned therefore finds the

affidavit itself does not provide a substantial basis for a finding of probable cause.

In *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir.1990),the Fourth Circuit held that

the probable cause determination made by the magistrate judge should be shown "great deference."

The Government argues that the Court should not only consider the four corners of the affidavit, but

instead the information presented to the magistrate must be viewed by a test of the "totality of the

circumstances," citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983).   This argument must fail,

however, because, although Deputy Kelley testified he usually discussed  information with the

magistrate other than his signed statement, he could not swear he did so in this case.  He also could

not swear he showed the magistrate the photo of the naked male taken from Amy Workman's

computer and admitted it was not attached to the affidavit.  He testified he knew for a fact that the

only information that was sworn was the affidavit.  Neither does the fact that the magistrate also

signed an arrest warrant support the Government's argument.  Like the affidavit, the facts in the

criminal complaint in support of the warrant only state:

> Amy Workman received several obscene photographs by e-mail at her residence on
> South Spring Street in Harrisville, Ritchie County, W.V.  She recognized the person

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 12 of 24   PageID #:
Case 1:05-cr-00004-IMK   Document 126   Filed 04/28/2005   Page 12 of 24

**ATTACHMENT A   Page 12 of 24   11/25/2009**

depicted in the photos as being the defendant.

The undersigned therefore finds the affidavit in support of the first search warrant was not sufficient to establish probable cause for the warrant.

### *Leon* Exception

The Government argues that, even if the information in the affidavit were found to be insufficient for a finding of probable cause to issue a search warrant, the evidence seized in the first and second search should not be suppressed pursuant to the "good faith exception" stated in *U.S. v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 677 (1984).

The United States Supreme Court has held that the exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In *Leon*, the Supreme Court explained the reason for rule:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

*Leon* at 915, 104 S. Ct. at 3417. Further:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

*Id.* at 918, 104 S. Ct. 3 at 3419. The Supreme Court concluded:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained

12

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 13 of 24   PageID #: 431
Case 1:05-cr-00004-IMK   Document 126   Filed 04/28/2005   Page 13 of 24

ATTACHMENT A   Page 13 of 24   11/25/2009

> in objectively reasonable reliance on a subsequently invalidated search warrant
> cannot justify the substantial costs of exclusion.

*Id.* at 922, 104 S. Ct. at 3420.  Therefore, the question of whether the good faith exception to the

exclusionary rule should be applied to suppress evidence, depends on whether suppression of the

evidence would have the desired effect of deterring police misconduct.  In most cases, "when an

officer acting with objective good faith has obtained a search warrant from a judge or magistrate and

acted within its scope . . . . there is no police illegality and thus nothing to deter." *Id.* at 920-21, 104

S. Ct. at 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in *United States v. Lalor*:

> Under the good faith exception to the warrant requirement, evidence obtained from
> an invalidated search warrant will be suppressed only if the officers were dishonest
> or reckless in preparing their affidavit or could not have harbored an objectively
> reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993).  *Accord United States v. Bynum*, 293 F.3d 192, 197-199 (4th Cir. 2002)

(applying good faith exception where "affidavit contained sufficient indicia of probable cause so as

not to render reliance on it totally unreasonable," reversing district court's suppression of evidence);

and *United States v. Cluchette*, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search

warrant issued by state judge over telephone, declining to determine whether warrant was valid

under state law.)  In other words, the good faith exception applies unless "a reasonably well-trained

officer . . . [should] have known that the search was illegal despite the magistrate's authorization."

*Leon*, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search

warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was
> false or would have known was false except for the officer's reckless disregard of the

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 14 of 24   PageID #:
Case 1:05-cr-00004-IMK   Document 126   Filed 04/28/2005   Page 14 of 24

ATTACHMENT A   Page 14 of 24   11/25/2009

truth;
(2) the magistrate wholly abandoned his detached and neutral judicial role;
(3) the warrant was based on an affidavit that was so lacking in indicia of probable
cause as to render official belief in its existence entirely unreasonable; and
(4) the warrant was so facially deficient, by failing to particularize the place to be
searched or the things to be seized, that the executing officers cannot reasonably
presume it to be valid.

*United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995), *quoting Leon*, 468 U.S. at 923.

In his Motion to Suppress and Supplemental Memorandum, Defendant argues that "the

magistrate issuing the search warrant did not have a substantial basis to determine probable cause

and, therefore, *Leon, supra*, should not apply." He does not allege, nor is there any evidence to

support an allegation that Deputy Kelly misled the magistrate with information he knew was false

or would have known was false but for his reckless disregard for the truth. In fact, the undersigned

finds Deputy Kelly's testimony regarding the circumstances of his investigation, the search warrant,

and the execution of the search warrant completely credible. There is also no allegation and no

evidence to support an allegation that Ritchie County Magistrate Haugh "wholly abandoned his

judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)." *U.S.
v. Leon*, 468 U.S. 897.[3]

---

[3]Regarding the actions of the Town Justice in *Lo-Ji*, the Supreme Court stated:
He allowed himself to become a member, if not the leader, of the search party which
was essentially a police operation. Once in the store, he conducted a generalized
search under authority of an invalid warrant; he was not acting as a judicial officer
but as an adjunct law enforcement officer. When he ordered an item seized because
he believed it was obscene, he instructed the police officers to seize all "similar"
items as well, leaving determination of what was "similar" to the officer's discretion.
Indeed, he yielded to the State Police even the completion of the general provision
of the warrant. Though it would not have validated the warrant in any event, the
Town Justice admitted at the hearing to suppress evidence that he could not verify
that the inventory prepared by the police and presented to him late that evening
accurately reflected what he had ordered seized.

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 15 of 24   PageID #:
Case 1:05-cr-00004-IMK      Document 126    Filed 04/28/2005    Page 15 of 24

ATTACHMENT A   Page15 of 24   11/25/2009

The undersigned further finds the search warrant described with particularity the place to be searched and the things to be seized.

The sole remaining question regarding the issuance of the first search warrant is therefore whether "the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* Contrary to Defendant's argument, the question is not whether the magistrate issuing the search warrant had a "substantial basis" to determine probable cause. The Fourth Circuit addressed the distinction in *U.S. v. Bynum*, 293 F.3d 192 (4th Cir. 2002), stating :

> "Substantial basis" provides the measure for determination of whether probable cause exists in the first instance. *See United States v. Harris*, 403 U.S. 573, 581, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). If a lack of a substantial basis also prevented the application of the *Leon* objective good faith exception, the exception would be devoid of substance. In fact, *Leon* states that the third circumstance prevents a finding of objective good faith only when an officer's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405 (citation omitted). This is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.

*Id.* at 196.

A review of Deputy Kelly's affidavit does not indicate it "was so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*." (Emphasis added). This is not a case of a "bare bones" affidavit, relying on anonymous informants.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

*United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996). Here Deputy Kelly named the individual who provided the information, Amy Workman. He did not rely on Ms. Workman's conclusions

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 16 of 24   PageID #:
Case 1:05-cr-00004-IMK    Document 126    Filed 04/28/2005    Page 16 of 24

ATTACHMENT A   Page16 of 24   11/25/2009

regarding the facts, but performed his own investigation of the facts before seeking the search warrant. He stated in the facts that Ms. Workman identified Daniel Testerman as the person in the photos. He indicated the address to be searched was Daniel Testerman's residence. Although he did not state in the facts that the sender of the e-mails did not disclose his identity, the undersigned believes this can be inferred by the fact that Ms. Workman needed to identify the person in the photos. The U.S. Supreme Court expressly found that a magistrate has the "authority . . . to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). If the sender had identified himself, there would have been no need for Ms. Workman to do so. Accordingly, the essential elements of the statutory charge were met, albeit just barely.

Nor is there an indication in this case of any sort of bad faith by Deputy Kelley. He did not "craftily choose his words in an attempt to clothe [his affidavit] with 'genuine substance.'" *See U.S. v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996). In *Bynum*, the Fourth Circuit noted:

> "There is nothing here to suggest that" Agent Peterson in any way "was dishonest."
> . . . . On the contrary, that Agent Peterson consulted with the prosecutor prior to applying for the search warrant provides additional evidence of his objective good faith, like the law enforcement officer in *Leon*, 468 U.S. at 902, 104 S.Ct. 3405, and unlike the officer in *Wilhelm* . . . .

293 F.3d at 198 (internal citations omitted). As already stated, the undersigned finds Deputy Kelly completely credible. He interviewed Ms. Workman by telephone and then in person. He went to her house personally to look at the e-mailed photographs. She told him why she believed the photos were of Daniel Testerman. He then contacted another deputy sheriff who was more computer literate (Deputy Kelly testified he knew little more about computers than how to type reports). He then interviewed Ms. Workman again at his office, where he took her official statement. Deputy

16

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 17 of 24   PageID #:
Case 1:05-cr-00004-IMK   Document 136   Filed 04/28/2005   Page 17 of 24

ATTACHMENT A   Page17 of 24   11/25/2009

Kelly testified that he had a very difficult time finding a prosecuting attorney with whom to consult

regarding the case because the County Prosecuting Attorney, David Hanlon, was seriously ill and

not expected to live, and the county was using several others to "fill in" for him.  Still, Deputy

Kelley found and consulted with  Kevin Postlewait, who had been appointed for a few months to

fill in for Mr. Hanlon, before applying for the search warrant.  As in *Bynum*, "this provides

additional evidence of his objective good faith, like the law enforcement officer in *Leon*."  *Id.*

The undersigned notes that, had Deputy Kelly included all the information known to him in

the affidavit, it would have been sufficient to establish probable cause.  In *Bynum*, the Fourth Circuit

noted:

> The district court also seemed to accept that if this linkage had been set forth in
> Agent Peterson's affidavit, it would have been sufficient to establish probable cause.
> *See Bynum*, 125 F.Supp. 2d at 793-797.  But, of course, as noted above, Agent
> Peterson's affidavit did not expressly include this information.
>
> If the district court relied on the absence of this information in refusing to apply
> *Leon's* good faith exception, that reliance was error.  Where, as here, the affidavit
> itself provides information not "so lacking in indicia of probable cause as to render
> official belief in its existence entirely unreasonable" . . . a court should not refuse to
> apply the *Leon* good faith exception just because the officer fails to include in that
> affidavit all of the information known to him supporting a finding of probable cause.

*Id.* (internal citations omitted.)  Because the undersigned here finds Deputy Kelley's affidavit was

"not so lacking in indicia of probable cause as to render official belief in its existence entirely

unreasonable," he will not refuse to apply the *Leon* good faith exception just because [Deputy

Kelley] fail[ed] to include in [his] affidavit all of the information known to him supporting a finding

of probable cause." *Id.*

The undersigned notes that the Fourth Circuit has not yet resolved the question of whether

"additional facts, which the government proved were known to the affiant police officer, but not

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 18 of 24   PageID #:
Case 1:05-cr-00004-IMK     Document 126   Filed 04/28/2005   Page 18 of 24

ATTACHMENT A   Page 18 of 24   11/25/2009

revealed to the magistrate prior to issuance of the search warrant, could be considered in the *Leon*

analysis." *Id.* at 199. In fact, the Fourth Circuit noted that the Courts were divided on this question,

comparing *U.S. v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) (holding when affidavit itself is totally

lacking in indicia of probable cause, the *Leon* good faith reliance inquiry does not extend to facts

known to officers but not included in affidavit), with *U.S. v. Marion*, 238 F.3d 965, 969 (8th Cir.

2001) (holding that when assessing good faith under *Leon* a court looks at the "totality of the

circumstances" including information demonstrating probable cause known to the affiant, but not

included in his affidavit); *U.S. v. Taxacher*, 902 F.2d 867, 871-73 (11th Cir. 1990)(same); and *U.S.*

*v. Word*, No. IP 99-106-CR, 2000 WL 724041, at *13 *15 (S.D. Ind. May 31, 2000), *aff'd*, No. 00-

2688, 2001 WL 13133, 1 Fed. Appx. 491 (7th Cir. Jan. 2, 2001) (same). The Fourth Circuit then

noted:

> Our dissenting colleague, Judge Michael, makes a persuasive case that such
> information should not be considered in determining whether the officer displayed
> the objective reasonableness described in *Leon*. To so hold would certainly seem as
> Judge Michael well explains, to undercut Fourth Amendment protections, and be at
> odds with the very purpose of the *Leon* good faith exception. On the other hand, to
> refuse to consider such information in making the *Leon* inquiry creates an anomaly.
> Even though *Leon* itself renders admissible evidence otained pursuant to a warrant
> supported by an affidavit that lacks probable cause, Judge Michael's interpretation
> of *Leon* would bar admission of evidence obtained pursuant to a warrant supported
> by the affidavit of an officer, who, in fact, possesses probable cause, but
> inadvertently omits some information from his affidavit.

*Id.* Like the Fourth Circuit, the undersigned here does not tackle this difficult question, because he

finds Deputy Kelly's affidavit "contained sufficient indicia of probable cause so as not to render

reliance on it totally unreasonable." *Id.*

For all the above reasons, the undersigned finds the officers' reliance on the first search

warrant issued by the Magistrate Judge Haugh was objectively reasonable. The good faith

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 19 of 24   PageID #:
Case 1:05-cr-00004-IMK     Document 126     Filed 04/28/2005     Page 19 of 24

ATTACHMENT A   Page19 of 24   11/25/2009

exception, therefore, renders the evidence seized in the search admissible.

**Execution of the First Warrant**

Defendant also argues: "The law enforcement officer conducting the search seized property

not authorized by the warrant." The warrant describes the property used to commit the offense

alleged as "any and all records contained within any personal computer's hard drive and memory

as well as all software which may have been used in connection with and to facilitate the above

crimes . . ." It then commands the officers "to search forthwith the computer above described and

all appurtenances appertaining thereto for the property above specified, to seize such property and

bring the same before me . . . ." The Property Receipt shows the deputies seized the CPU, monitor,

a scanner, keyboard, photo printer, mouse, digital camera, and eight diskettes.

Defendant argues the search warrant only authorized the seizure of records contained <u>within</u>

the hard drive and memory, plus software which may have been used in connection with and

facilitation of the crime charged. He then argues that, of all the property seized, only the eight

diskettes fit the description contained in the warrant. The Government contends: "The seizing agent

was a Deputy Sheriff in a rural county who transported 'the records contained within' in the only

way possible." Neither party cites any case law in support of his or her respective argument. Neither

could the undersigned find any case law exactly on point. The undersigned does find the Fourth

Circuit case *U.S. v. Shilling*, 826 F.2d 1365 (4th Cir. 1987) instructive, however. The search warrant

in *Shilling* authorized the seizure of certain types of documents. The Government admitted that,

"because of the volume of the documents and the desire to keep them intact and prevent loss, IRS

agents seized some documents outside the warrant. In fact, the IRS agents removed entire file

cabinets from the house." *Id.* at 1369. One of the agents testified:

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 20 of 24   PageID #:
Case 1:05-cr-00004-IMK   Document 436   Filed 04/28/2005   Page 20 of 24
ATTACHMENT A   Page20 of 24   11/25/2009

It wasn't really a search. We reviewed the documents in the file cabinet and realized there were so many documents that we could not go through them. So we decided to keep them in one place, and that is when we decided to take the whole cabinet.

The Fourth Circuit held:

> Some courts have found that practical considerations justify the seizure of entire file cabinets. *See, United States v. Taumra* [sic], 694 F.2d 591 (9th Cir. 1982). Here, it is clear that substantial practical problems were presented by the task of examining the mass of Shilling's records. While the Government's desire to keep the records intact may have real merit, we cannot easily condone the wholesale removal of filing cabinets and documents not covered by the warrant . . . .
>
> We recognize the questionable propriety of the IRS agents' seizure of documents not covered by the warrant, as did the court below in its Order denying Shilling's suppression motion. Even so, it must be emphasized that the documents which pertained to the counts on which Shilling pled guilty had been lawfully seized, since they had been described in what we have found to be a valid search warrant. The exclusionary rule does not compel suppression of evidence properly covered by a warrant merely because other material not covered by the warrant was taken during the same search, especially where, as in this case, such other materials were not received into evidence against the defendant. *See Tamura*, 694 F.2d at 597; *United States v. Daniels*, 549 F.2d 665, 668 (9th Cir. 1977). Because we conclude that the overbroad seizure of records here was prompted by legitimate practical concerns, rather than by an intent to engage in a fishing expedition through Shilling's papers, we reject Shilling's claim that the documents seized should be suppressed.

In the case at bar, the warrant authorized the deputies to <u>search</u> the computer and all the appurtenances thereto, but authorized them to <u>seize</u> <u>only</u> certain records contained <u>within</u> the computer. Deputy Kelly testified he was not computer literate, and believed a computer was like a big filing cabinet with the files inside. He further testified that the computer was all hooked together with wires, and he believed he needed the whole thing in order to see the "records within." Nevertheless, the undersigned finds the seizure of the monitor, a scanner, keyboard, photo printer, mouse, and digital camera went beyond the scope of the warrant. As in *Shilling*, however, the undersigned here finds "substantial practical problems were presented by the task of examining" the computer and "all its appurtenances thereto" for the specific property described in the warrant,

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 21 of 24   PageID #:
Case 1:05-cr-00004-IMK      Document 136   Filed 04/28/2005   Page 21 of 24
ATTACHMENT A   Page21 of 24   11/25/2009

especially considering the rural county deputy sheriff's lack of computer literacy. Certainly it would

have been the better procedure for the deputies to have located an individual with the expertise to

search the computer files on site for the described property. On the other hand, "[t]he exclusionary

rule does not compel suppression of evidence properly covered by a warrant merely because other

material not covered by the warrant was taken during the same search . . . ." *Id.*  Therefore, the

exclusionary rule does not compel suppression of property legally seized pursuant to the search

warrant  in the case at bar – that is "any and all records contained within any personal computer's

hard drive and memory as well as all software which may have been used in connection with and

to facilitate the above crimes."

Because I conclude that the overbroad seizure here "was prompted by legitimate practical

concerns, rather than by an intent to engage in a fishing expedition" through Defendant's computer

files, I reject Defendant's claim that the records should be suppressed.

**The Second Search Warrant**

Defendant next argues evidence seized pursuant to the second search warrant should be

suppressed because the warrant fails to describe the place to be searched, and the affidavit used to

support the issuance of the warrant is based upon the issuance of the previous search warrant. As

already discussed, after the first seizure, the deputies set up the computer in their office.

Defendant's wife was in the room at the time, as was Amy Workman and her mother and sisters.

While the deputy was taking Defendant's statement in another room, someone in the office

screamed. He ran to the office, where he found Amy Workman and her mother hysterical and "out

of control." There was a photograph on the computer screen of a very  small girl performing oral

sex on an adult male. Amy Workman told the deputies the little girl in the photo was her three-year-

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 22 of 24   PageID #:
Case 1:05-cr-00004-IMK      Document 116      Filed 04/28/2005    Page 22 of 24

ATTACHMENT A   Page 22 of 24   11/25/2009

old daughter, A.W. Deputy Kelly testified Defendant's wife also looked at the photo and said, "oh

my God, no wonder he didn't have anything to do with me!"

After seeing the new photos of the child, Deputy Kelly again contacted the Prosecuting

Attorney's office for assistance putting together a second search warrant to seize the computer in

order to search it for child pornography. There is no dispute that the computer was already in his

custody. He thought it prudent to obtain a second search warrant since the first was for the photos

of the naked man that were sent to Amy Workman, and not for child pornography. The Ritchie

County Magistrate on duty at this time was Teresa Harper. Deputy Kelly's affidavit in support of

the second search warrant was as follows:

> That between December ___, 2002, and August 20, 2003, and prior to the making
> of this Complaint, in the said County of Ritchie, Daniel Testerman, did unlawfully
> and feloniously engage in sexual contact and sexual intrusion with A.D.W. while she
> was under his care, custody or control in violation of WVa Code 61-8D-5(a), and
> that the affiant has cause to believe and does believe that property, kept concealed,
> which is and has been used in violation of a crime, namely, any and all internal
> records contained within the hard drive and memory as well as all software of that
> certain emachine etower 600is personal computer Serial Number: QAA09E0061191
> relating to children engaged in sexual activity or any other crime and that the facts
> for such belief are that after obtaining a Search Warrant to search for the photographs
> e-mailed to Amy Workman, the said Amy Workman identified her three year old
> daughter, A.D.W., as one of the images depicted on the computer engaged in sexual
> activity with an adult male.

Magistrate Harper issued the Search Warrant which commanded the search of "the computer

above described and all appurtenances appertaining thereto for the property above specified, to seize

such property and bring the same before me to be dealt with according to law."

In this instance, the undersigned agrees that the deputy sheriff acted prudently and

appropriately in seeking a search warrant, even though he already had seized the computer. He was

not authorized by the first search warrant to search for and seize evidence of child pornography or

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 23 of 24   PageID #:
Case 1:05-cr-00004-IMK       Document 126   Filed 04/28/2005     Page 23 of 24
ATTACHMENT A   Page23 of 24   11/25/2009

child abuse, only evidence of computer harassment. The undersigned also finds the second warrant does describe the place to be searched, that being the identified computer. Further, because the undersigned has already found the first search of the computer valid, the second search, based upon evidence discovered during the first search, is also valid.

**The Third Search**

Because the Government has stated in open court that it will not use any of the evidence seized pursuant to the third search warrant, the undersigned need not address the merits of Defendant's motion in that regard.

## RECOMMENDATION

For all the above reasons, the undersigned finds that records seized pursuant to the first and second search warrant, as well as the eight diskettes were all lawfully seized. As to all this evidence, therefore, the undersigned recommends Defendant's Motion to Suppress be **DENIED**.

As to the property the undersigned has found was illegally seized in the first search, that is, the monitor,  scanner, keyboard, photo printer, mouse, and digital camera, the undersigned recommends Defendant's Motion to Suppress be **GRANTED**. In addition, as to the CPU, the filing cabinet, the undersigned finds it was lawfully seized under the circumstances and now that it has been searched, *United States v. Taumra* 694 F.2d 591 (9th Cir. 1982), it too should be returned and therefor the undersigned recommends Defendant's Motion to Suppress the CP,U but not its contents (the files contained in its hard drive and diskettes, be **GRANTED.**

As to the property seized in the third search, the undersigned recommends Defendant's Motion to Suppress be **GRANTED.**

For docketing purposes only, the undersigned recommends Defendant's Motion to Suppress

Case 1:05-cr-00004-IMK-JES   Document 123-1   Filed 12/01/09   Page 24 of 24   PageID #:
Case 1:05-cr-00004-IMK   Document 126   Filed 04/28/2005   Page 24 of 24
ATTACHMENT A   Page24 of 24   11/25/2009

[Docket Entry 5] be **GRANTED IN PART AND DENIED IN PART**.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *Thomas v. Arn*, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 28th day of April, 2005.

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE